Good morning ladies and gentlemen and welcome to the appellate court in the state of Illinois. We have one case on the call for today. Advise the lawyers, by rule you get 20 minutes, you don't need to take 20 minutes to argue if you want to, feel free, but you might want to reserve time for rebuttal if you're going to rebut. Speak loudly if you would so we can hear you. This is not an amplification device, it's a reporting device. So thank you very much for your attendance today. Attorney and madam, what case do we have on the call today? 16-0195, Community Medicine, big city of Chicago. Alright, very well. Lawyers, just stand at the table for a minute and identify yourselves for the record. Jordan Hoffman, on behalf of the appellate. Thank you sir. Julian Rodriguez, on behalf of the city of Chicago. And counsel? Mary Ann Pasteros, on behalf of the city of Chicago. Thank you very much. Appellant, ready to proceed? Yes. Counsel Hewitt, please. May it please the court, counsel. Well, this case of Mayor Madison v. City of Chicago comes to you on appeal from dismissal pursuant to 2619. The issue is whether the tort immunity one year limitation for filing an action primarily from Madison's claim of under the municipal code for 147 should apply. As opposed to the enumerated exceptions in 10-211, specifically E in this case. There have been a case of Havnusky that had been the controlling precedent for as many years as my opponent cites in their brief. And we are requesting that that precedent be rejected. We are requesting that this court apply the five year statute of limitations pursuant to 735.513.205 as adopted by the controlling precedents in the 4th and 5th districts. In the case of Harvest Church of Arlington, Collins, and Gallagher. And more recently, the case of United Airlines v. City of Chicago in this district. Counsel, can I ask you about the first section of 201? First sentence is nothing in this act affects the right to obtain relief other than damages against a local public entity. Am I right? That's correct. That's the first sentence and then a couple of words after that. Second, nothing in this act affects liability, if any, of a local public entity or public employee. Second sentence, do you consider those together or are they totally separate thoughts? I mean, because the question I have for you is ranchery homes, which you rely on, is that right? That is one of the cases that Harvest Church of Arlington relied on. Right. And then going on ranchery, though, which is relied on by Harvest Church and Collins rely on that. Didn't they make the decision on that case relative to the first sentence as far as relief, not relative to liability, which is the second sentence? In that case, in some of the, I think in the dissent, they said that they conflated the two. But there is something unclear and perhaps maybe they made the decision based upon this being other than relief for damages. Ranchery, it based its interpretation exclusively on the relief other than damages of 2101. And so why should we be filing the cases where the plaintiff was seeking damages? Well, I would say if you look at the cases in Harvest Church and trying to reconcile the conflict between the statute and the tort immunity act and giving some meaning and some teeth to the enumerated exceptions, it looked at the language that talks about affecting the liability. And, you know, basically eviscerated the notion that this procedural versus substantive sort of concept. And, you know, I think that in order to give some bearing and some weight to the enumerated exceptions and actually make them apply, the court applied traditional statutory interpretation where there are conflicts. And instead of looking to the defendant, as was done in some of the other cases that are cited, Peskovsky, for one, and Ferguson, which in the dissents had created confusion in terms of the analysis when there is a conflict of statutes, they looked at the nature of the party and the cause of action. Well, when someone talks about liability, doesn't that sort of give you an arrow towards damages? Yes, it does. Yes, it does. But I would say that if you don't give effect to the enumerated exceptions, and if you say it only applies to relief other than damages, it kind of has an absurd result. So in this instance, as it applies to what we want to eat, if we have a situation where we're looking to accept it from the one-year limitation and say, okay, but we can have other relief, declaratory relief, five years down the road or four years down the road, it certainly flies in the face of the principle cited by the city in Circus where it says that the social purpose of having such other relief is to give the decision-maker an opportunity to have control of the controversy early on and to move it one step to conclusion. And certainly that sort of interpretation does not lend itself to saying that this only applies to situations where it's relief other than damages. So to prevent an absurd result and to give effect to both the one-year immunity under 101, under A-101, and to give effect to the enumerated exceptions to the Toronto Community Act, the court applied that particular standard. And I think this court should apply that standard as well. Let me ask you a question. First of all, am I correct that you did not file a reply brief? That is correct. So you did not respond to the argument the city made in its brief that the amendment to 8-101-B, the two-year statute of limitations for patient care for all actions including contract actions, that doesn't really make sense, that amendment, if contract actions were already exempt from the statute of limitations. And I'm wondering if you have an answer to that. Contract actions are exempt by virtue of 2-101-B. So if the statute of limitations in the Toronto Community Act didn't apply, which is your position, why would that amendment take place? What would be the purpose of that amendment? Well, if I understand you correctly, that amendment applies to actions against patient care arising out of harm caused by a public entity. And I don't believe that that particular exception was actually enumerated in the initial exceptions under 101-A-F. So perhaps maybe that was the rationale. When they looked at it, they said that we needed to make this exception and to allow an extra year because, after all, we do have a situation where you have plaintiffs that may not know that that public entity is not a public entity and there's going to be additional steps we have to be taking. They have to go out and they have to get affidavits from a physician to determine whether or not they have a valid cause of action. And there's additional investigation that would need to be done. So I think that that would be the rationale for that and is why that really would have no bearing on me, the overall analysis as to the other enumerated exceptions in 2-101-A-F. Counsel, this argument that's made about substantive immunities versus procedural immunities, do you think that argument holds any weight? Well, you know, I've read these cases and scratched my head for several weeks now, and I would have to say that I would agree with the Collins Court. When you look at the substantive immunity versus procedural, it makes more sense in the context of a public carrier where you have the notice provision where they have to have notice as they say, not a precondition, but to me it seems like a precondition that notice has to be sent in the case of CTA. I think that six months prior to filing now, my understanding from some of the cases that I've read, that if that notice is not sent, then in that particular case it can be they still can do a referral and the defendant has to raise an affirmative defense to bring that into play. And I don't really think it makes much of a distinction or much of an impression in terms of interpreting this statute. When you look at it, if you look at a statute of limitations, all of these are statute of limitations. All of them are procedural. And if you apply this substantive versus procedural argument, first of all, I think it came out of a case of Fleming back in 1942 where they were talking about, in that particular case, the liability was a debt owed to an estate, owed to the testator or the person in the debt that had not been paid back. And so somehow that morphed its way into this analysis through Fleming and then into Lambert, which is I think a case involving a statute of repos, again involving a minor that was attempting to recover based upon a claim for either a wrongful death, not a survival action. And so I think when it morphed into this language and got into Hapemuski, it came up with this kind of artificial construct that creates a difficulty. And then when you look at it in the context of the 101 AUE effort sections, it kind of becomes an absurdity because liability certainly speaks to damages. And when you say it's procedural only and applies to statute of limitations, it just seems to be somewhat nonsensical to me. The argument here is whether or not – the argument is not relative to whether or not the one-year or two-year statute of limitation applies. The argument is whether or not substantively the city is not liable for these things. Do you disagree with that? No. The argument is that the city is liable substantively for the actions taken under 147 in having demolished wrongfully property that caused financial damages to the citizens. Based on the filing five years later. Based on the filing five years later, we don't think that this substantive – procedural substantive argument really applies. It just doesn't – it doesn't – when you use that language, it has the effect of nullifying the impact of the numerator exceptions, particularly with 147. And it makes it of no effect. It makes it, in fact, numeratory. And I think the courts in Harvard's Church and Commons recognize that. By the time they got to Ballinger, they really didn't even have a discussion on it. But certainly, Harvard's Church labored on looking at what was the appropriate approach to statutory interpretation when there was a conflict between those statutes competing and trying to give effect to both. And I think that eliminating that particular precedent and getting rid of that whole notion, you know, that this substantive versus a procedural right in this context does just that. It gives effect to the 101A through E. And I know that one of the arguments that the city made was, well, you know, Madison did not ask for damages in count one of the 147 and was pleading artfully to get around the one unit. Actually, it was just a mistake. Certainly, we have damages, and if the case were sent back to the trial court, we would ask the lead to amend the six-way slips to conform our pleadings to the proof that we have available to us. One minute, counsel. Well, I just have one question. Do you agree with the city that even if we were to reverse on count one and say that the five-year statute applied to that, that your other claims are barred by the one-year statute of limitations? You know what I'm going to say? I have found no authority for my premise that my claims were derivative, although I believe they still are. But, of course, you know, one could argue and we could reason with minds that differ and say that, well, you know, they do have separate bases. Perhaps maybe there was a claim under 1983 for state action or something, or a civil rights claim under Illinois, which we did not plead, I don't believe. So the gravity of the action that we're really looking at is under an interim use we call 147. And I would like to reserve my remaining time for Brooke Rabot. I may be a little confused on this. Yes. I think in the I think 101, the definition under civil action as it pertains to the one-year statute limitations, it included any action based on common law of Constitution or the State. And the fundamental meaning of the amendment to the Act is that the Federal actions against public entities no longer fall within the provisions of the Tort Immunity Act. Consequently, Happenisky affects neither Cooper nor our decision today. Does that upend anything that you've told us today? No, I don't think so. I think that only really applies to situations where we're talking about if we had a claim based upon the State's civil rights action, I think that discussion was in reference to Goodman's versus Lukens, where there was a class action under Title VII and some 1981 claims where we had African-American plaintiffs suing their union for failure to represent them. And there was a question of whether or not their claim was within tort or sounded in contract. And, of course, under 1981, they were saying it sounded in contract. Ultimately, I think, you know, there was a discussion saying that there was no statute of limitation under 1981. The closest statute of limitation that applied was under the Pennsylvania Tort Act, which was a two-year. And ultimately, they decided that it wasn't a contractual claim but rather a tort claim and sent it back. And then after, I think, another case was decided in this case in which one was ultimately, the court decided under state law that the statute of limitation under the civil rights action was five years. So I don't think it has any application to this at all. Counsel, thank you very much. Thank you. Thank you. May it please the court, again, I'm Julian Henricus. I represent the city of Chicago. Ms. Madison alleged in her complaint that the city wrongfully demolished a building on her property on July 29, 2010. But she waited five years after the demolition to file her complaint in this case. The city moved to dismiss the action on the ground that it is barred by the one-year limitations provision in Section 8. Has there been any case since Raytree which has followed the distinction that you relied and that the trial court relied on between the statute of limitations, the procedural parts of the Tort Immunity Act, and the substantive parts of the Tort Immunity Act for the exemptions? Any case since Raytree? Since the Supreme Court's decision in Raytree, which Harvest Homes and United Airlines and all the cases that you acknowledge and that your opponent cites, has said there is no distinction. There's an exemption and we're going to treat these claims as exempt from the Tort Immunity Act. There's been no case that I'm aware of that actually addressed the treatment in Raytree and the different treatment in the other appellate court cases that you decided. But this seems like a fairly elemental situation here. Except that all these cases have said Raytree decided it and then the Supreme Court in dissent in Peskovsky said the Supreme Court's decided it. I mean, I don't know if the Supreme Court's decided it, but everybody else seems to say the Supreme Court's decided it. Well, certainly the dissent didn't... It's not right because they know how all these cases are interpreted in the Supreme Court's opinion. Right. Whatever they brought. But it seems to me that the issue is not that complicated. The Raytree Homes case was plainly based on the first sentence of 2-101. That sentence talks about claims for damages. Only if a claim is for damages is it subject to the Tort Immunity Act. If a claim is not subject to damages, it's not subject to the Tort Immunity Act, including Section 8-101. As counsel has acknowledged today, all of his claims were damages claims. He unartfully drafted his complaint in the first count, the 1-4-7 count, to state declaratory relief, but he understands that that's really a damages count. And so under the first sentence, his claim is subject to the Tort Immunity Act. The only way that he could avoid liability is if his case was one... if limitations provisions do not affect liability. That's the second sentence of 2-101. There's absolutely no reason why one would read those two sentences as conflating the six subsections following the second sentence with the provision concerning damages in the first sentence. Those are plainly different requirements. So this case turns on, it seems to us, on whether or not limitations provisions affect liability. If they do affect liability... If they do, nothing in this Act affects the liability. Nothing in this Act affects it. Not the scheduled limitations, not the notice provision, not the... I mean, it could be read that way. Well, I think it means that anything in the Act that does affect liability is exempt from the Tort Immunity Act, including the limitations provision. But it also means that anything that does not affect liability is subject to the Tort Immunity Act, including the one-year limitations provision. And the only one of these cases, the only case that's addressed that issue is the Happendusky case. Which has actually been vacated. I mean, that's not even really a decision anymore, is it? It was vacated. No, that decision... The decision in that case, this Court's decision in that case, addressed the limitations provisions of all the claims in the case. I understand that. It was vacated. I mean, I understand that it's never been disagreed with, but it's not even really a case update, is it? Well, no, I mean, it's stronger than that. What happened was, in that case, the U.S. Supreme Court granted cert and remained it to address issues concerning limitations provisions. And when the case came back, this Court only addressed... I understand. And, of course, the U.S. Constitution has no interest whatsoever in what limitations provisions are under Bill and Laura. They're interested in federalism. It's the only case that holds your wit. And the case that the trial court relied on is a vacated case. Am I correct? There's not a single other case. Because the other two cases, Cooper, I think it is, and actually, Cooper and McClintock really go to the notice provision. They don't go to the statute of limitations. They do go to the notice provision. That's correct. So the only case really is Papniewski, which really isn't a case because it's been vacated. Well, I wouldn't say that it really isn't a case. Again, the U.S. Supreme Court had no interest whatsoever in an Illinois statute of limitations. It vacated it only to consider the limitations provisions that applied to the federal claims. And when the case came back, this Court recognized that because it didn't disturb its earlier ruling. Exactly. Did it reaffirm it in Papniewski, too? Did it say, yes, we agree, we continue, just didn't say anything about it? I haven't looked for language in the decision either way. I think that the case simply went about its business addressing the remand instructions from the Supreme Court. What about Cooper and Slaughter? Well, those cases agree with Papniewski. They certainly came to the same conclusion. But based on notice. Based on notice. They concluded that the notice provisions of the Tort Immunity Act did apply to them. And just Harvest Church said we're not following this anymore. We're disagreeing with those. Those are our district and we're saying those aren't good law. Well, that was their conclusion. They didn't address those cases at all. Well, Harvest Church didn't address those cases at all. I believe Harvest Church says we disagree with that. I believe that they did. Well, if they did, then I'm mistaken. But there's certainly no Harvest Church. To the extent that the reasoning in Cooper and McClintock conflicts with the Supreme Court's reasoning in Raintree, we hereby abandon it. Well, they did not address the rationale of the Cooper and McClintock cases. They addressed only their bottom line conclusion that somehow or another the first sentence of Section 2-101 has anything to do with the second sentence of 2-101. They conflate those two sentences. They come to the conclusion that anything in either one of those two sentences means that claims are not subject to the limitations provisioned in the Tort Immunity Act, which seems to me to be without a principle at all, that that's not, that doesn't give, the reason why I say that is that doesn't give a quote the different language in the statute its different meaning. And, of course, that's one of the primary principles of the interpretation of enactments, statutes and ordinance. Is there some policy practical reason that the legislature would have made this distinction between liability and the procedural provisions of the Tort Immunity Act for these exemptions? Why would the legislature have done that? Well, because to allow things like the one-year limitations provision of the Tort Immunity Act to apply, let me emphasize one thing, and I guess I've overlooked this. I should have said this a little earlier. If you look in subsection B of 2-101. It says it doesn't apply. Well, it says operation is a common carrier, and then it also says, and this Act does not apply to any entity organized under or subject to the Metropolitan Transit Authority Act approved April 12, 2000. The Metropolitan Transit Authority Act is the Act that governs the CTA. So that sentence of subsection B does not apply to any transit authority anywhere else in the state, or any other transit authority. It only applies to the CTA. So this distinguishes the CTA from the other transit authorities, and the important ones here are this Act does not apply. That's unmistakable. That means that with respect to the Metropolitan Transit Authority, the CTA, nothing in the Tort Immunity Act applies. Only the Metropolitan Transit Authority applies. Now, nowhere else in the Tort Immunity Act does that language appear, and certainly nothing else, nowhere else in 2-101 does that language appear. We have this discomfort. Including in the first sentence, where Raytree says the Statute of Limitations doesn't apply. So you're right. You're right. But it kind of undermines your interpretation of Raytree, because it doesn't say the Tort Immunity Act does not apply when someone is seeking relief other than damages. It just says nothing. You know what I'm saying? If they have to say does not apply, they didn't say it in the first sentence. Well, the key here is that configuration, this Act does not apply, is used in only one circumstance. The other language that clearly is designed to preclude application of certain provisions but not others is different. It's not as strong. It's not as blanket as this Act does not apply. And so that means that the words in the second sentence, nothing in this Act affects the liability, cannot mean, necessarily do not mean this Act does not apply. It means that things turn on liability or not. Now, so that means that one has to decide which provisions of the Tort Immunity Act turn on liability and which don't. Those that do turn on liability are exempt from the Tort Immunity Act entirely, including the limitations provisions. But those that don't turn on liability, those provisions of the Tort Immunity Act that don't turn on liability, do apply to all these claims in subsections A and D. I don't understand that distinction you just made. I'm sorry. Can you explain it again? Again, this turns on the distinction between different language of preclusion. In subsection B, the words this Act does not apply are as blanket a preclusion as you could possibly have. They preclude the application of the entire Tort Immunity Act to the CTA. Doesn't matter what we're suing them for. That's right. Or at least, I may have overstated, at least to the CTA in its operations as a common carrier. They may do other things, I don't know. But at least with respect to their operations as a common carrier, this Act does not apply. So it's a blanket preclusion of the Tort Immunity Act. But that blanket of preclusion does not appear anywhere else in 2-101. It's different from the words of preclusion in the second sentence that says, nothing in this Act affects the liability of. That means that those words, nothing in this Act affects the liability of, is something less than a blanket conclusion. Well, does that include the Workers' Occupational Diseases Act and the Illinois Uniform Conviction Information Act? They're all in the same 745. Those are all, all six of those subsections turn whether or not provisions of the Tort Immunity Act apply to them depends upon whether the particular provision affects liability. Any provision that applies to any of those six claims that does affect liability is exempt from the entirety of the Tort Immunity Act. That's what that means. Any provision that does not affect liability is subject to the Tort Immunity Act, including, as in this case, the one-year limitations provision. So you're going back to the procedural-substantive distinction, essentially. That's right. And, of course, we have pre-existing laws. Hopanewski was not, did not write on a clean slate. Hopanewski relied on, you know, on case law that held, that recognized this distinction between procedural and substantive law to conclude that statutes of limitation in general, all statutes of limitation, are procedural. They're not substantive. They do not bear on liability. And the Hopanewski Court applied that rationale to conclude, to give life to these words, which is not a blanket preclusion language. It recognizes some provisions do apply and some provisions don't. And that was the way the Court decided which provisions did apply and which provisions don't apply to these, to the claims in these six subsections. And that's how you, that's how you. Why doesn't your same argument, and I'll ask this one more time, I don't know, why doesn't your exact same argument apply to the first sentence of 2-101? Well, it doesn't. The first sentence is also a less-than-blank, is preclusion language less, but it turns on a different factor. The first sentence turns on the right to obtain relief other than damages. The first sentence says that if the claim is a damages claim, then it is subject to the Tort Immunity Act. But if it's not subject to damages, if it doesn't seek damages, it's not subject to the Tort Immunity Act. But they could have said this act does not apply if the party is seeking relief other than damages. And they didn't say that. It just says it doesn't affect your rights. So to the extent there's a limitation on the kind of relief or who can, I don't know. I don't know the Tort Immunity Act probably as well as you do, but it seems to me that there are provisions that, other than the statute of limitations, that may be referred to here. I don't know. The only way we can think of that does what the rules of statutory interpretation require, which is to give effect to all language in a consistent way and read them all together, is to read them this way, which is that the blanket preclusion in the subsection B, this act does not apply, is one met way of using preclusion language. Another way is the preclusion language in the first sentence, nothing affects the right to obtain relief other than damages. And the third preclusion way, a method, is to use language like appears in the second sentence, which is nothing in this act affects the liability. And when you look at all of those things, we have a case here in which damages are sought, as counsel acknowledges, and so the first sentence, under the first sentence, it would be subject to the Tort Immunity Act, including the limitations provision, his client's claim. And then under the second sentence, since the limitations provision does not affect liability, as Hapinewski held, it is not subject, it is subject to the Tort Immunity Act. Under the plain language of the second sentence, the Tort Immunity Act applies. And that's what Hapinewski held, and that's what none of the other cases held. And, of course, the other four cases, as we said, went off on this tangent, relying on the first sentence, which has nothing whatsoever to do with whether or not a provision affects liability. The first sentence applies only with respect to the distinction of cases that seek damages and those that don't. Can we agree it should have been more plainly written content? Right, right. No, it is always, you know, I guess it's easy in retrospect to try to tease this stuff out. It would be wonderful if the legislature had been a little more explicit with respect to this. You want to sum up, then, counsel? Yes, well, for the city asks that this court confirm the judgment of the circuit court. Thank you very much. Thank you. And five minutes, counsel. The city spends a lot of energy on the Section B, saying why that is somehow different than the other enumerated exceptions, and, you know, referring to the statute. But even I see no authority for this proposition. And to the extent that whatever authority they're relying on may be slaughtered, Cooper, the Harvest Church case and the Collins cases nullified that. And for that reason, we think that Hapniewski, this substantive procedural distinction that he created, that, again, morphed out of the issue of a 1942 case, Fleming, where they brought into question the constitutionality of a statute of limitation case for the representative of an estate where there were debts owed, where they said that they wanted to apply the 10-year statute of limitations, and it went on into discussion about this money that was borrowed as an expectancy, and before they could collect from the pool of funds, they had to contribute to it. So that morphed from there to Lambert, and the issue with the statute of repos involving, I think, a 17-year-old, and somehow got into this substantive procedural distinction that Hapniewski put out there. And that was clearly rejected by the Harvest Church. That was clearly rejected by Collins. And I'm asking this Court to reject that and to look to those cases as the controlled inquestment now  Was Hapniewski vacated by the United States Supreme Court? Hapniewski, the only thing the United States Supreme Court said with respect to Hapniewski was, to the extent that there are civil rights claims, you need to apply the state court civil rights statute of limitations, and they sent it back. That was the only thing the Supreme Court did with that case. I did read that case. I read on several times, and that did not have any bearing on the limitations with respect to these enumerated exceptions in 2-101-A-3-F. Counsel, if I can ask you, the Fleming case you're talking about, did you cite that in your brief? Actually, counsel cited it in his brief. I didn't know it was such a long case, but I picked up on it that way. Fine. Okay. Counsel, thank you very much. Thank you. Thank you. Both lawyers, thank you for your excellent presentations here today, and we will take the case under advisement, and we look forward to hearing from us. Thank you.